UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LANCE WALTERS, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:19-cv-00568-JPH-MJD |
| STEPHANIE CRANK, *et al.* | ) |
| Defendants. | ) |

**ENTRY GRANTING MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*, SCREENING COMPLAINT, AND DIRECTING ISSUANCE OF PROCESS**

This action is before the Court for resolution of Plaintiff Lance Walters' motion for leave to proceed *in forma pauperis*, dkt. 2; for screening of his complaint pursuant to 28 U.S.C. § 1915A(a); and for issuance of process on the defendants.

**I. Motion for Leave to Proceed *In Forma Pauperis***

Mr. Walters' motion for leave to proceed *in forma pauperis,* dkt. [2], is **GRANTED**. Notwithstanding the foregoing ruling, Mr. Walters remains liable for the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). However, the assessment of even an initial partial filing fee is waived because the plaintiff has no assets and no means by which to pay a partial filing fee. 28 U.S.C. § 1915(b)(4). Accordingly, no initial partial filing fee is due at this time.

**II. Screening**

Mr. Walters is an inmate at Putnamville Correctional Facility (PCF). Because Mr. Walters is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint.

1

**A.      Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

**B.      The Complaint**

Mr. Walters' complaint concerns his treatment by the PCF staff for lupus since mid-October of 2019. He presents a litany of allegations against eleven defendants. While some of Mr. Walters' allegation support plausible claims that will proceed in this action, others are insufficient and must be dismissed.

   **1.      Claims That Will Proceed**

Wexford Health Sources, Inc., has contracted with the Indiana Department of Correction to treat inmates at PCF. Wexford's employees at PCF include Dr. Pablo Perez, Nurse Practitioner Cheryl Petty, and Medical Services Administrator Ryan Snarr.

Mr. Walters states that Dr. Perez interacted with him at least five times between October 16 and November 16, 2019, regarding lupus and symptoms Mr. Walters experiences due to lupus, including rashes and pain. On multiple occasions, Dr. Perez ignored Mr. Walters' rash or refused

to treat it; failed to provide or renew medications; and refused to refer Mr. Walters for treatment by a rheumatologist or dermatologist.

Mr. Walters sent treatment requests to Mr. Snarr. Mr. Snarr told Mr. Walters he was a "squeaking wheel" and denied Mr. Walters' request for a wheelchair based on his complaints. Mr. Snarr also ignored later grievances and requests for treatment.

Mr. Walters alleges that Nurse Petty refused to treat his rash on October 29, 2019. He further alleges that Nurse Petty refused to treat him on this or other occasions because he previously filed grievances against her.

Finally, Mr. Walters alleges that the defendants denied or delayed his treatment as the result of a Wexford policy or practice.

Based on these allegations, the action **shall proceed** with Eighth Amendment medical claims against Dr. Perez, Mr. Snarr, Nurse Petty, and Wexford pursuant to 42 U.S.C. § 1983. The action **shall also proceed** with First Amendment retaliation claims against Mr. Snarr and Nurse Petty pursuant to § 1983.

Claims against Dr. Perez, Mr. Snarr, and Nurse Petty shall proceed against them in their **personal capacities only**. "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165–166 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Because the action is proceeding with a claim against Wexford, any official-capacity claims against Wexford employees would be duplicative and are therefore **dismissed**.

### 2. Insufficient Claims

Mr. Walters asserts that the remaining seven defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. But the allegations against these defendants do not support plausible claims for relief.

#### a. Grievance Specialist Williams

Mr. Walters alleges that PCF Grievance Specialist Chris Williams agreed to take pictures of his rash to document the condition, but Mr. Williams did not attach the pictures to a grievance Mr. Walters filed, and he did not provide Mr. Walters with copies of the pictures for his records. Mr. Walters also alleges that, on another occasion, he told Mr. Williams about an e-mail stating that Nurse Petty was not allowed to treat him. However, Mr. Walters does not explain what Mr. Williams did (or what he should have done) in response to this information or how his actions (or inaction) affected Mr. Walters.

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pittman v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Neither of Mr. Walters' allegations against Mr. Williams raises a reasonable inference that Mr. Williams was in a position to provide Mr. Walters with treatment for his serious medical condition or that he knowingly disregarded a serious risk of harm to Mr. Walters. Mr. Walters' Eighth Amendment claim against Mr. Williams is **dismissed** for **failure to state a claim** upon which relief may be granted.

### b.      Officer Galbreath and Nurses Barnhart and Crank

Mr. Walters alleges that Officer Galbreth greeted him when he arrived at the health care unit on October 29, 2019, and informed him that he had an appointment to see Nurse Petty. Mr. Walters objected and requested to see Dr. Perez and Nurse Ryan instead. Nurses Anastasia Barnhart and Stephanie Crank were present for this discussion and explained that there had been a scheduling error. Mr. Walters adds that the medical staff "did not even take [his] basic vitals on this visit." Dkt. 1 at ¶ 16.

Mr. Walters further alleges that, on November 16, 2019, he was unable to pick up his medication because he was at church. When he called the health care unit, Officer Galbreth said he would have to come back another day because she was done handing out medicine for the day. However, Nurse Jamie allowed Mr. Walters to pick up his medicine that day.

The Eighth Amendment does not entitle Mr. Walters "to demand specific care," including treatment by the medical professionals of his choice. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). The allegation that Officer Galbreth, Nurse Barnhart, and Nurse Crank did not allow him to see his preferred doctor or nurse on October 29 does not support a plausible claim for relief.

Additionally, "[n]o matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *see also Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) ("[T]here is no tort without an actionable injury caused by the defendant's wrongful act."). On November 16, Mr. Walters was permitted to pick up his medicine. The complaint does not support a reasonable inference that he suffered any injury because Officer Galbreth initially refused his request. Similarly, Mr. Walters does not allege that

he presented with a medical emergency on October 29. Rather, he alleges that he was called to the health care unit to see Nurse Petty about his rash. The complaint does not support a reasonable inference that he suffered any injury because the medical staff did not check his vitals during that visit.

For these reasons, all claims against Officer Galbreth, Nurse Barnhart, and Nurse Crank are **dismissed** for **failure to state a claim** upon which relief may be granted.

    **c.**    **Officer Hooker**

On November 9, 2019, Mr. Walters visited the pharmacy window to pick up new medications, but Officer Hooker only had medications that Mr. Walters had already been taking. Officer Hooker told Mr. Walters that, if he was not going to take the medications that had been prescribed, he would have to sign a refusal form releasing Wexford from liability. Mr. Walters refused. As Mr. Walters left, Officer yelled at him and said she would lock him up in segregation.

The complaint does not allege that Officer Hooker is authorized to prescribe medications or to distribute medications that have not been prescribed by a doctor. Moreover, the complaint does not allege that Officer Hooker refused to provide medications that had been properly prescribed by a doctor. None of the allegations in the complaint raises a reasonable inference that Officer Hooker was in a position to provide Mr. Walters with the medications he thought were appropriate or that she knowingly disregarded a serious risk of harm to Mr. Walters. Mr. Walters' Eighth Amendment claim against Officer Hooker is **dismissed** for **failure to state a claim** upon which relief may be granted.

    **d.**    **Warden Smith and Dr. Mitcheff**

Mr. Walters asserts one allegation apiece against PCF Warden Brian Smith and Wexford Regional Medical Director Mike Mitcheff.

6

Mr. Walters alleges that, on one occasion, he told Warden Smith about an e-mail stating that Nurse Petty was not allowed to treat him. However, Mr. Walters does not explain what Warden Smith did (or what he should have done) in response to this information or how his actions (or inaction) affected Mr. Walters.

Similarly, Mr. Walters states, "I wrote letters to Dr. Mike Mitcheff the Regional medical Director for WEXFORD HEALTH SOURCES INC., and received no reply from him on each occasion regarding my complaints." Dkt. 1 at ¶ 6. Mr. Walters does not state what he communicated in his letters to Dr. Mitcheff.

Mr. Walters' allegations are not sufficient to raise a reasonable inference that Warden Smith or Dr. Mitcheff was in a position to provide Mr. Walters with treatment for his serious medical condition or that either knowingly disregarded a serious risk of harm to Mr. Walters. Mr. Walters' Eighth Amendment claims against Warden Smith and Dr. Mitcheff are **dismissed** for **failure to state a claim** upon which relief may be granted.

### III. Issuance of Process

The **clerk is directed** pursuant to Federal Rule of Civil Procedure 4(c)(3) to issue process to Defendants (1) Wexford Health Sources, Inc., (2) Dr. Pablo Perez, (3) Ryan Snarr, and (4) Cheryl Petty, in the manner specified by Federal Rule of Civil Procedure 4(d). Process shall consist of the complaint (dkt. [1]), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

### IV. Summary and Further Proceedings

Mr. Walters' motion for leave to proceed *in forma pauperis,* dkt. [2], is **granted**. The assessment of even an initial partial filing fee is waived.

The action **shall proceed** with claims against Defendants (1) Wexford Health Sources, Inc., (2) Dr. Pablo Perez, (3) Ryan Snarr, and (4) Cheryl Petty, as discussed in Part II(B)(1). All other claims are **dismissed** for the reasons set forth in Part II(B)(2). The **clerk is directed** to update the docket to reflect that these are the only defendants in the action.

The discussion of claims in Part II(B) addresses all claims the Court identified in the complaint. if Mr. Walters believes he alleged additional claims that the Court did not discuss in Part II(B), he shall have **through January 17, 2020**, to notify the Court and identify those claims.

The **clerk is directed** to issue process to the defendants according to Part III above.

**SO ORDERED.**

Date: 1/3/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LANCE WALTERS
103746
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Wexford Health
c/o Registered Agent, Corporation Service Co.
135 N. Pennsylvania St.
Ste. 1610
Indianapolis, IN 46204

Pablo Perez
Medical Professional
Putnamville Correctional Facility
1946 West US Hwy. 40
Greencastle, IN 46135

Ryan Snarr
Medical Professional
Putnamville Correctional Facility
1946 West US Hwy. 40
Greencastle, IN 46135

Cheryl Petty
Medical Professional
Putnamville Correctional Facility
1946 West US Hwy. 40
Greencastle, IN 46135

Courtesy copy to:

    Douglass R. Bitner
    Katz Korin Cunningham, P. C.
    The Emelie Building
    334 North Senate Avenue
    Indianapolis, IN 46204